W. H. KENNEDY, ADMINISTRATOR, APPELLANT, v. N. E. NELSON, APPELLEE: ANNA JARL ET AL., INTERVENERS, APPELLANTS: BETHPHAGE INNER MISSION ET AL., INTERVENERS, APPELLEES.

FILED JULY 7, 1933. No. 28582.

*R. O. Canaday, J. H. Robb* and *A. C. Swenson,* for appellants.

*G. L. Godfrey, J. L. McPheely* and *C. P. Anderbery, contra.*

Heard before Goss, C. J., Rose, Day and Paine, JJ., and Begley, Landis and Meyer, District Judges.

Begley, District Judge.

This is an action brought by W. H. Kennedy, administrator of the estate of Anna C. Johnson, deceased, to set aside a deed, and asking to be awarded the possession of, or accounting for, certain property which belonged to Anna C. Johnson in her lifetime. He is also joined in this demand by Anna Jarl and Elna Wennberg, interveners.

The appellee, N. E. Nelson, claims the estate as trustee under the terms of a gift made by said deceased prior to her death. In this position he is joined by the Bethphage Inner Mission and the Christian Orphans' Home as interveners and appellees. The trial court found for appellees and the plaintiff and interveners have appealed.

On March 5, 1929, Anna C. Johnson was ill; she was of the age of eighty-five years and apparently developing an attack of pneumonia. Being advised that her illness was critical, she, for the purpose of making the arrangements which she desired as to her property, sent for Mr. G. L. Godfrey, an attorney and friend, who came to her home

for the purpose of advising her and assisting in making the necessary provisions for the disposition of her property. Mr. Godfrey was accompanied by his wife, and there were also present at the residence, at this time, the defendant, N. E. Nelson, and Mrs. Ellis, a nurse. At this time Mrs. Johnson executed a deed to N. E. Nelson and delivered same to G. L. Godfrey to be delivered to N. E. Nelson after her death. She also assigned and transferred to said Nelson a note for $4,000 and other notes, and a certain certificate of deposit, and as evidence of the same executed the following instrument:

"Know all men by these presents that I have deeded this day to N. E. Nelson my home place by warranty deed and delivered to G. L. Godfrey to be delivered to N. E. Nelson after my death. I have also assigned and transferred to the said N. E. Nelson a note for Four Thousand Dollars ($4,000), dated Sept. 9th, 1924, and due in one year, signed by Oscar M. Nelson and N. E. Nelson. I also authorize and empower N. E. Nelson to collect any and all certificates of deposit in any and all banks payable to me, and also to collect any and all notes payable to me and signed by any persons whomsoever.

"In consideration of the foregoing the said N. E. Nelson is to sell and convert as soon as conveniently may be, without sacrifice and pay One Thousand crowns to my niece, Anna, the only one there, and the remainder of Two Thousand Dollars to Missions in Sweden, well known to N. E. Nelson and Five Hundred Dollars each to the four children of my sister, Kate or Mrs. N. E. Nelson.

"After my funeral expenses and debts are paid, whatever remains he is to distribute to the Bethphage Mission near Axtel and Orphans' Home near Holdrege.

"Witness: G. L. Godfrey.

"Anna C. Johnson."

The transactions took place in a room at the bedside of Mrs. Johnson. When they were concluded Mr. Godfrey gathered up the documents, taking with him the deed, the

certificate of deposit, and the above named instrument, but through an oversight did not take with him the notes. After the departure of Godfrey, a niece, Mary Nelson, observed the notes there, gathered them up and replaced them in the handbag of Mrs. Johnson, which was the place from which she obtained them in the first instance. The notes remained there until after the death of Mrs. Johnson, and it is shown that she saw them several times, but nothing was said or done about them. The deceased remained at her home for approximately one month, attended by a nurse, then became somewhat convalescent and was taken to her brother's home and got so that she could occasionally be up from her bed in the house and at the table, but died May 11, 1929, approximately two months after the transactions which are here in question. Upon her death Godfrey and Nelson recorded the deed, cashed the certificate of deposit; Nelson took possession of the notes and proceeded in the payment of sickness and funeral expenses and toward the distribution of the funds in accordance with the provisions of the written document, including the payment of one thousand crowns to Anna Jarl, appellant herein.

There is some allegation in the pleadings that the deceased was of unsound mind and not capable of understanding the transactions and the nature or extent of her property or what was being done with it, but the evidence is to the contrary and conclusively shows that at the time the deceased was of sound mind and capable of understanding the transaction.

The appellants base their contention for reversal upon the following propositions: (1) That there was no intention on the part of the donor to make a present gift of the property; (2) that there was no sufficient delivery on the part of the donor to make the transaction a valid gift *causa mortis*; (3) the gift was revoked by the subsequent recovery of Mrs. Johnson; (4) the title to the real estate did not pass under the deed of March 5.

Considering proposition one, we find the deed is in the regular form of a warranty deed. It contains no conditions and makes no reference to any extraneous matter whatever. In considering the written instrument, it states specifically that the donor has deeded this day to N. E. Nelson and that she has assigned and transferred to him a note and authorized him to collect any and all certificates of deposit and all notes and then proceeds to specifically direct what shall be done with the proceeds when collected. The notes were indorsed in the regular manner and the indorsement of all the other instruments was the same. There is no suggestion of any condition or power either in the written instrument or in the testimony at the trial. The notes, about which delivery is complained, were retained by an oversight of Mr. Godfrey, and not by any act of the donor. They were regularly indorsed and transferred on the backs and the written instrument also refers to them.

In *Tyrrell v. Judson,* 112 Neb. 393, it was held: "A person having property may give the same in his lifetime directly to the donee, or by any suitable declaration to a third person for the use of the donee, authorizing such person to make delivery of the subject of the gift after the donor's death."

On the second proposition presented, that there was no sufficient delivery on the part of the donor to make the transaction a valid gift *causa mortis,* it is argued that G. L. Godfrey was the agent of the donor and that delivery of the papers to him with instructions to deliver them to Nelson after the donor's death was insufficient to constitute a gift *causa mortis.* It may be admitted that if Godfrey was the agent of the donor then delivery to him would not constitute a gift, but there is no evidence of any agency between the donor and Godfrey. She parted with all possession and dominion over the papers. The person to whom the delivery is made is presumed, in the absence of a contrary showing, to be the trustee of the donee. *Varley v. Sims,* 100 Minn. 331.

"Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift." 28 C. J. 640.

It is also argued that because the notes were, by oversight, left in the possession of the donor after the assignment and delivery to Godfrey, the gift was ineffectual. "It is not necessary that the donee should retain the property in his possession after delivery to him. The subsequent possession by the donor, while it may in some cases tend to throw suspicion upon the transaction as being in fraud of creditors, and calls for an explanation, is not necessarily incompatible with the donee's dominion over the property, and will not necessarily operate to make the gift ineffectual." 28 C. J. 641. See *Garrison v. Union Trust Co.*, 164 Mich. 345; *In re Estate of La Grange,* 191 Ia. 129.

As to the third proposition, that the gift was revoked by the subsequent recovery of Mrs. Johnson, the facts are that this lady, eighty-five years of age, was ill; she was thought by her physician to be developing an attack of pneumonia, and this brought about the transaction which is under consideration. Her illness continued and she was attended by a nurse for approximately four weeks; became somewhat convalescent; was removed to her brother's home, where she continued apparently, during a short time, to be on the road to recovery so far as to enable her to be out of bed at intervals, but within approximately two months after the onset of this attack she died. The evidence discloses that she died of the same illness which she had at the time of the transaction in question. In view of the completeness of the transactions, her advanced age and the character of her illness, we do not think it can be said that there was such a recovery as would operate to revoke the gift.

As to the fourth proposition, as to the title of the real estate passing under the deed of March 5, it was held in *Dunlap v. Marnell*, 95 Neb. 535: "If a grantor deposit a deed with a third person, without power of revocation or recall by the grantor, and with directions that it be held until the grantor's death and then put upon record by the holder, this is a sufficient delivery and will be effectual to pass the title to the grantee, even though he had no knowledge of the execution of the deed."

We therefore conclude that, under the facts in this case and under the terms of the written instrument, there was a valid gift *causa mortis*. The deceased knew what she wanted to do with her property. She secured competent advice, she adopted the method that was suggested to her, and her intent and purpose were clear.

The judgment of the district court is

AFFIRMED.